# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

JAMES C. WILLIAMS                                                    PETITIONER

v.                              NO. 2:09CV00075 BSM/HDY

T.C. OUTLAW, Warden,                                                 RESPONDENT
FCC Forrest City, Arkansas

### FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge Brian S. Miller.  Any party may serve and file written objections to these findings and recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendation.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

DISPOSITION

BACKGROUND.   Petitioner James C. Williams ("Williams") represents that in December of 2006, he was sentenced in the United States District Court for the Western District of Washington to a term of imprisonment for "traveling with intent to engage in illicit sexual conduct with a minor."  See Document 1 at 3.  He represents that he entered the custody of the Federal Bureau of Prison ("BOP") and, at some point, came to be incarcerated at the Federal Correctional Complex in Forrest City, Arkansas ("FCC-Forrest City"), the warden of which is respondent T.C. Outlaw ("Outlaw").

ALLEGATIONS.   Williams alleges that during his stay at FCC-Forrest City, two problems have arisen.  First, he alleges that BOP officials are violating the Second Chance Act of 2007 ("Second Chance Act") by refusing to ensure that he spends a portion of the final months of his sentence under conditions that will afford him a reasonable opportunity to adjust to and prepare for his re-entry into the community and by refusing to "transfer [his] case back to [his] home district."  See Document 1 at 4.  Specifically, he alleges that extraordinary circumstances, namely, his need to find adequate post-incarceration housing and employment, justify awarding him more than 150 to 180 days in a "halfway house" and/or justify transferring his case back to his home district.  He maintains that BOP officials have refused to take either action.

Second, Williams maintains that BOP officials have been deliberately indifferent to his serious medical needs.  In support of that assertion, he represents the following:

Upon arrival here, I furnished my medical records and requested they be reviewed with the Doctor.  They never to this day have been reviewed nor have I had a complete physical exam.  When I arrived here I was on certain pain medications that the BOP doctors had approved based on my failed back surgery.   These Doctors here took me off the pain medications and thereby increased my suffering greatly.   I requested assistance and was repeatedly ignored, as it became more and more difficult to walk and I have the unit farthest from medical.  In … 2007, I tripped over a jutted piece of sidewalk and fell, further injuring myself. It took 18 months and BP8, BP9, BP10, [and] BP11 before anything positive happened, and the Neurologist found that I was suffering from "Peripheral Neuropathy" and to date I am receiving no assistance for that condition either.

I have sent requests to … Outlaw to review and get involved in this situation and to date I have received no response.  I have made many requests of medical and psychology for review of my records and adjust medications as required yearly.  I have not yet had that review and instead I have been continually been given a medication that can damage my liver, kidneys, and pancreas.  I am supposed to have blood tests twice yearly and those have not been done to monitor the levels of the psychogenic drugs in my system so as not to damage internal organs.  I have not had the prescribed X-Rays yearly and the only Doctor visit I get is one every six months as I am on Chronic Care for High Blood pressure, but my blood pressure is not monitored.  Every time I have been to the Dr. and had my pressure checked it has been very high, and no treatment plan has ever been developed to treat or keep it at the correct levels.  In addition, the Psychology department has not reviewed my Depakote as they are required to do yearly nor have they interviewed me or set up any appointments as I requested.  I have … had some problems in adjusting here and when I needed the counsel of that department it was not available, nor is it now after numerous requests.  The BOP has … increased the pain and suffering levels which I would not have to deal with on the street in society and I could also seek psychological help for both the drugs I take and the problems I have.  In addition to these things, I also have peripheral artery disease, gastritis, esphoglitis and breathing problems that were being treated with an inhaler that I was never given back nor supplied here.  …

<u>See</u> Document 1 at 4-5.

-4-

PLEADINGS.  Williams commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241.  In the petition, he advanced two separate claims.  In claim one, he alleged that BOP officials are violating the Second Chance Act by refusing to ensure that he spends a portion of the final months of his sentence under conditions that will afford him a reasonable opportunity to adjust to and prepare for his re-entry into the community and/or by refusing to transfer his case back to his home district.  Specifically, Williams alleged that extraordinary circumstances, namely, his need to find adequate post-incarceration housing and employment,  justify awarding him more than 150 to 180 days in a "halfway house" and/or justify transferring his case back to his home district.  In claim two, he alleged that BOP officials have been deliberately indifferent to his serious medical needs.[1]

Outlaw filed a response to the petition in which he asked that it be denied.  In support of that request, he advanced the following reasons: (A) Williams' claim of deliberate indifference is not cognizable in a petition pursuant to 28 U.S.C. 2241; (B) he has failed to exhaust the requisite administrative remedies; (C) his claim of deliberate indifference is without merit as he merely disagrees with the course of treatment being followed by BOP officials; and (D) he cannot show that BOP officials have violated the Second Chance Act.

---

[1]

In a supplement to his 2241 petition, he additionally alleged that BOP officials are harassing and/or retaliating against him for filing the petition.

The undersigned reviewed Outlaw's response and determined that Williams should be invited to submit a reply. He was so invited but declined the invitation when he failed to submit a reply.

The undersigned has now reviewed the parties' pleadings and exhibits. On the basis of that review, the undersigned issues the following findings and recommendation.

CLAIM ONE. Williams alleges that BOP officials are violating the Second Chance Act by refusing to ensure that he spends a portion of the final months of his sentence under conditions that will afford him a reasonable opportunity to adjust to and prepare for his re-entry into the community and/or by refusing to transfer his case back to his home district. Specifically, Williams alleges that extraordinary circumstances, namely, his need to find adequate post-incarceration housing and employment, justify awarding him more than 150 to 180 days in a "halfway house" and/or justify transferring his case back to his home district.

The undersigned begins an analysis of Williams' claim by noting that the BOP has a three-tiered administrative process for addressing "an issue relating to any aspect of [a prisoner's] confinement." See 28 C.F.R. 542.10(a). A prisoner is typically required to follow or otherwise exhaust the administrative process before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust the administrative process would be futile.

-6-

Outlaw maintains that Williams has not exhausted the administrative process with regard to claim one. Outlaw maintains that "[t]o date, [Williams] has failed to complete the final appeal level regarding [claim one]." <u>See</u> Document 16 at 3. Outlaw supports his assertion with an affidavit from James Crook ("Crook"), a BOP Supervisory Attorney.

The undersigned has reviewed Crook's affidavit. The representations contained in it are unrebutted and have support in the record. Accordingly, the undersigned finds that to date, Williams has failed to complete the final appeal level regarding claim one. He did not follow nor otherwise exhaust the administrative process with regard to claim one before filing the petition at bar. In addition, there is no evidence that requiring him to complete the administrative process would be futile. The undersigned therefore recommends that claim one be dismissed because Williams failed to exhaust the administrative process with regard to the claim.

Assuming, <u>arguendo</u>, that Williams completed the administrative process <u>after</u> the submission of Crook's affidavit, the undersigned turns to consider claim one. 18 U.S.C. 3624, as amended by the Second Chance Act, provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." <u>See</u> 18 U.S.C. 3624(c)(1). The statute provides that the conditions may include confinement in a community correctional facility/community

corrections center/residential re-entry center, all of which are commonly known as a "halfway house."   The statute provides that the decision to confine a prisoner in a "halfway house" shall be made on an individual basis and shall be made in light of several factors, most but not all of which are identified in 18 U.S.C. 3621(b).  See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)].[2]  Additionally, BOP Program Statement 3710.04 provides that confinement in a "halfway house" beyond 180 days is "highly unusual and only possible with extraordinary justification."  See BOP Program Statement 3710.04 at 8.

Outlaw maintains that the BOP has complied with the Second Chance Act.  He specifically maintains the following: "[Williams] has not demonstrated that the BOP failed to comply with the applicable statutes in making his ["halfway house"] determination or that the decision should be set aside as arbitrary, capricious, or an abuse of discretion."  See Document 16 at 7.  Outlaw maintains that instead, "[t]he BOP has worked with [Williams] to relocate his supervision and conducted a needs assessment regarding ["halfway house"] placement."  See Id.  Outlaw supports his assertions with an affidavit from Crook.

---

[2]

The factors identified in 18 U.S.C. 3621(b) are as follows: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence--(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

The undersigned has now reviewed Crook's affidavit.  The representations contained in it are unrebutted and have support in the record.  Accordingly, the undersigned finds that the BOP has complied with the applicable statutes and Program Statement in determining that Williams should spend 150 to 180 days in a "halfway house."  The determination appears to have been made on an individual basis and was based on several factors as evidenced by the document captioned "Second Chance Act - RRC Needs Assessment."  <u>See</u> Document 16, Affidavit of James Crook, Attachment 3.  There is no evidence that the determination was arbitrary, capricious, or an abuse of discretion.  The undersigned therefore recommends that claim one also be dismissed because Williams cannot show that BOP officials have violated the Second Chance Act.

<u>CLAIM TWO</u>.  Williams also maintains that BOP officials have been deliberately indifferent to his serious medical needs.  A brief summary of this claim is not easy.  It appears that he objects to the following: (1) having his pain medication taken away; (2) being housed a long distance from the prison infirmary and being forced to walk to the infirmary without assistance; (3) being denied and/or delayed medical treatment for injuries he sustained when he tripped on a broken sidewalk; (4) being denied an annual review of his medical condition; (5) being given medication that could damage his liver, kidneys, and/or pancreas; (6) being denied regular blood tests, x-rays, medical examinations, treatments for his hypertension, and reviews of his Depakota medication; and (7) having his inhaler taken away.

-9-

A prisoner may challenge the execution of his sentence by means of a petition filed pursuant to 28 U.S.C. 2241.  See Matheny v. Morrison, 307 F.3d 709 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042 (8th Cir. 1995).  The undersigned understands "execution" to mean the manner in which a sentence is actually served.  See United States v. Peterman, 249 F.3d 458 (6th Cir. 2001).  A challenge to some aspect of the prisoner's conditions of confinement, though, is instead cognizable in a proceeding pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Outlaw maintains that William is challenging the medical care he has received, and/or failed to receive, and such a claim is "the classic type of allegation dealing with … conditions of confinement."  See Document 16 at 2.  Outlaw maintains that Williams should not be allowed to use 28 U.S.C. 2241 to litigate such an issue.

The undersigned has reviewed the parties' submissions and is convinced that Williams is attempting to litigate his medical care, or lack thereof, in a proceeding he commenced pursuant to 28 U.S.C. 2241.  He cannot do so as the claim must be raised in a Bivens action.  The undersigned therefore recommends that claim two be dismissed because Williams is attempting to pursue a claim that cannot be pursued in a proceeding pursuant to 28 U.S.C. 2241.[3]

---

[3]

It is worth noting that before Williams can litigate claim two in a Bivens action, he must exhaust the administrative process with regard to the claim.  It does not appear that he has taken the steps to exhaust the administrative process with regard to the claim.

RECOMMENDATION.  On the basis of the foregoing, the undersigned recommends that Williams' two claims be dismissed.  The undersigned finds that he failed to exhaust the administrative process with regard to claim one and cannot show that BOP officials have violated the Second Chance Act.  With regard to claim two, the undersigned finds that it is not cognizable in this type of proceeding.  The undersigned recommends that Williams' petition be denied and that judgment be entered for Outlaw.[4]

DATED this ____13____ day of November, 2009.


_____
UNITED STATES MAGISTRATE JUDGE

---

[4]

Two concluding notes are in order.  First, Williams asked that his case be transferred back to his home district.  He failed, however, to advance a legitimate reason for doing so.  Second, he alleged in a supplement to his petition that BOP officials are harassing and/or retaliating against him for filing the petition.  His claim, however, is not cognizable in this type of proceeding.